St. Joseph & Denver R. R., plaintiff in error, v. Matthew F. Baldwin, defendant in error.

1. **Government Grant of Land to Railroad:** right of way. In the year 1869, B. purchased from the United States the south-east quarter of the south-east quarter and the north-west quarter of the south-east quarter of section eleven in township one, range three, in Jefferson county, Neb. In July, 1866, Congress passed an act granting to the state of Kansas for the use and benefit of the St. Joe & Denver R. R. Co., every alternate odd section of land for a distance of ten miles on each side of the track, and providing that, if, when the line or route was definitely fixed, the United States had sold any section so granted or any part thereof, or that the right of pre-emption or homestead settlement had attached to the same, or they had been reserved by the United States, that other lands might be selected in lieu thereof. The act also granted the right of way to said company across the public lands. In 1871 the plaintiff located its line through the above described lands. B. took the necessary steps under the statutes of the state for the assessment of damages, and judgment was rendered in his favor for the sum of $200. *Held*, that B. was entitled to compensation for the right of way.

2. ——: ——: Such lands were subject to entry and settlement, until the plaintiff had filed maps of its line designating the route, with the Secretary of the Interior, and the lands had been withdrawn from market, under the provisions of section four of the act.

Error to the district court for Jefferson county. Tried below before Weaver, J. The case is stated in the opinion.

*Doniphan & Reed* and *John Saxon*, for plaintiff in error.

This question brings up for construction *only* the sixth section of said act. The right of way is granted *completely* by that section. It is the only subject matter of that section, and none of the other sections are connected

by the slightest relations of context with it. It is encumbered with no limitations, no conditions, no restrictions. It is not possible in the construction of it to reach out for aid to the other sections. For so completely does it stand isolated and disassociated from them, that the rule, that in the construction of an instrument or a statute you must take the *whole* of it into consideration, has no application to this question. Plaintiff in error holds that the said grant of the right of way, as made by section six, is operative in said Railroad Company's favor from July 23, 1866, the day the act was approved, and that the acquisition of all interests in land over which said road "*may pass*," and which constituted a part of the "*public domain*," when the act was passed, were subject to the right of way granted by said section. The defendant in error, on the other hand, claims that the right of way given by said section does not attach in said Railroad Company's favor on the day when said act was approved. That in the construction of this section, to gather its legal import, it is necessary to consult the previous sections of the act; that the same conditions, restrictions, and limitations, as qualify the grant of *land* made in the first section of said act, also qualify the grant of the *right of way* made in the sixth section. And they zealously claim that when, as in section one, the route of the said railroad becomes *definitely fixed*, it appears that land in the line of the road has been sold, homesteaded, or pre-empted, not only does the railroad lose the land thus sold, homesteaded, or pre-empted, as is provided for in said section one, but they lose also the *right of way* granted by the said section six. They insist that the road must be *definitely fixed* and *located*, and that the *same conditions* must be performed by the company as are necessary under said act to vest the title of the land granted in the company, before the *right of way* is available to the company. The plaintiff in error

claims that such a construction cannot be maintained. The words employed by said section six are, "be and the same *is hereby* granted." These are words of *present granting*, and import an *immediate* transfer of title. 21 Wallace, 44. 9 Wallace, 95. 53 Mo., 563. 11 Iowa, 450. 92 U. S., 741.

The subject matter of the first section is land, that of the sixth, the right of way. The *grantee* or trustee mentioned in the first section is "The State of Kansas,"—the grantee in the sixth section is the "*Saint Joseph & Denver City Railroad Company.*" We have then, in this act of Congress, *two distinct, separate grants*, with different subject matters, and different grantees. A grant is but a contract of the sovereignty. We have then, in this act, two contracts; and by what rule of law will it be claimed that the *conditions* of *one* contract can be made applicable to another when the subject matter is totally different ; when there is no reference making it a part, and when even the contracting parties are different ? *Central Pacific R. R. Co. v. Dyer*, 1 Sawyer, 641. *Leavenworth R. R. Co. v. United States*, 92 United States, 733.

*Brown & Marshall*, and *Slocum & Hambel*, for defendant in error.

The company never had a right of way over the lands of the United States lying in Kansas, where it had a legal existence, until it had filed with the Secretary of the Interior maps of its lines definitely designating and fixing the route and location of its road. *Western Pacific R. R. Co. v. Tevis*, 41 Cal., 489. *Alabama & Florida R. R. Co. v. Burkett*, 46 Ala., N. S., 569. *California Northern R. R. Co. v. Gould*, 21 Cal., 255. Lacey's R. R. Digest, 255, Sec. 809–810.

It is insisted that the grant of the right of way is a

separate and independent grant, and that section six is to be construed as if it stood alone ; that the land grant is to the state of Kansas, while the grant of the right of way is directly to the company ; but this position we insist is not tenable.   True, the grant of the right of way is directly to the company "for the construction of a railroad as proposed."   As proposed where ?   Is it not "as proposed" in the preceding sections of the act ? Can it be doubted that the words "as proposed" refer to the location of the road as defined in section one ?   Congress had no power to permit a Kansas corporation to build a railroad in Nebraska.   This permit can only be given by Nebraska alone.   *United States v. Rock Island R. R. Bridge Co.*, 6 McLean, 517.   *Glemer v. Lime Point*, 10 Cal. 229.

MAXWELL, J.

On the twenty-third day of July, 1866, Congress passed " an act for a grant of lands to the state of Kansas to aid in the construction of the Northern Kansas Railroad Company."   Section one of the act provides: "That there is hereby granted to the state of Kansas, for the use and benefit of the Saint Joseph and Denver City Railroad Company, the same being a corporation organized under the laws of Kansas, to construct and operate a railroad from Elwood, in Kansas, westwardly, via Maryville, in the same state, so as to effect a junction with the Union Pacific Railroad, or any branch thereof, not farther west than the one hundredth meridian of west longitude, every alternate section of land designated by odd numbers, for ten sections in width on each side of said road, to the point of intersection.   But in case it shall appear that the United States have, *when the line or route of said road is definitely fixed*, sold any section or any part thereof granted as aforesaid, or that the right

of pre-emption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the Secretary of the Interior to cause to be selected for the purposes aforesaid, from the public lands of the United States nearest to the tier of sections above specified, so much land, in alternate sections or parts of sections designated by odd numbers, as shall be equal to such lands as the United States have sold, reserved, or otherwise appropriated, or to which the rights of pre-emption or homestead settlement have attached as aforesaid," etc.

Section four provides: " That as soon as the said company shall file with the Secretary of the Interior maps of its lines, designating the route thereof, it shall be the duty of the said Secretary to withdraw from the market the lands granted by this act, in such manner as may be best calculated to effect the purposes of this act and subserve the public interest."

Section six provides: " That the right of way through the public lands be and the same is hereby granted to the said Saint Joseph and Denver City Railroad Company, its successors and assigns, for the construction of a railroad as proposed," etc.

On the twenty-seventh day of October, 1869, the defendant purchased from the United States the south-east quarter of the south-east quarter, and the north-west quarter of the south-east quarter of section eleven, in township one, range three, in Jefferson county, Nebraska, and has continued to own said lands ever since.

In the year 1871, the plaintiff located its line of road over the above described lands, taking a strip through the same about two hundred rods in length and two hundred feet in width. The defendant took the necessary steps under the laws of this state to have the damages assessed, and an award was made in his favor. On appeal

from the award to the district court, he recovered judgment for the sum of $200. The cause was brought into this court by petition in error.

The railroad company set up as a defense, that by the act of Congress approved July 23, 1866, they were granted the right of way through the public lands of the United States, and they insist that this was a grant *in presenti*, which took effect without regard to the location of their line, and that therefore all lands sold by the United States after the passage of the act, and before the location of the road, although sold without reserve and for full consideration, were taken subject to this grant. No such construction can be given to the act. Construing its provisions together, it is apparent that the right of way was granted only across such lands as were owned by the United States at the time of the location of the line of the road. The plaintiff might with equal propriety insist that they were entitled to all the odd numbered sections for ten miles on each side of the road, although the same had been entered prior to the location of the line. Such lands were subject to entry and settlement, until the plaintiff had filed maps of its line, designating the route, with the Secretary of the Interior, and the lands had been withdrawn from market under the provisions of section four of the act.

A party purchasing agricultural lands from the United States, without reservation or condition, takes the entire title to the same. He acquires a right of property therein, of which he can be divested only for public use, and on just compensation being made for the same. As the defendant herein was the owner of the lands in controversy at the time of the location of plaintiff's line across the same, he is entitled to damages for the right of way. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.